# EXHIBIT A

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **DANE**

Megan Daniels et al vs. United HealthCare Services, Inc.    **Electronic Filing Notice**

FILED
11-15-2019
CIRCUIT COURT
DANE COUNTY, WI
2019CV003172
Honorable Rhonda L.
Lanford
Branch 16

Case No. 2019CV003172
Class Code: Other-Contract

---

UNITED HEALTHCARE SERVICES, INC.
C/O CT CORP SYSTEM
301 S BEDFORD ST, STE 1
MADISON WI 53703

Case number 2019CV003172 was electronically filed with/converted by the Dane County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a $20.00 fee to register as an electronic party.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: 0bba82**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 608-266-4311.

Dane County Circuit Court
Date: November 15, 2019

FILED
11-15-2019
CIRCUIT COURT
DANE COUNTY, WI
2019CV003172
Honorable Rhonda L.
Lanford
Branch 16

**STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY**
**BRANCH \_\_\_\_**

MEGAN DANIELS
15145 Kings Ridge Court
Brookfield, WI 53005

BETSY DANIELS
15145 Kings Ridge Court
Brookfield, WI 53005

CHRIS DANIELS
15145 Kings Ridge Court
Brookfield, WI 53005,

        Plaintiffs,

v.

UNITED HEALTHCARE SERVICES, INC.
c/o CT Corporation System
301 South Bedford Street, Suite 1
Madison, WI 53703

        Defendants.

Case No.:
Civil Code: 30303
CONTRACT

---

## SUMMONS

---

THE STATE OF WISCONSIN:

To each person named above as a Defendant:

       You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal

action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons, you must respond with a written answer,

as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may

reject or disregard an answer that does not follow the requirements of the statutes. The answer

must be sent or delivered to the Court, whose address is Dane County Courthouse, 215 South

Hamilton Street #2000, Madison, WI 53703 and to Plaintiffs' attorneys, whose address is Gingras,

Thomsen & Wachs, 8150 Excelsior Drive, Madison, WI 53717. You may have an attorney help or represent you.

　　　　If you do not provide a proper answer within forty-five (45) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

　　　　Dated this 15th day of November, 2019.

　　　　　　　　　　　　GINGRAS, THOMSEN & WACHS

　　　　　　　　　　　　Electronically Signed By /s/ Robert J. Gingras
　　　　　　　　　　　　Robert J. Gingras
　　　　　　　　　　　　State Bar No.: 1002909
　　　　　　　　　　　　Scott B. Thompson
　　　　　　　　　　　　State Bar No.: 1098161
　　　　　　　　　　　　8150 Excelsior Drive
　　　　　　　　　　　　Madison, WI 53717
　　　　　　　　　　　　P: (608) 833-2632
　　　　　　　　　　　　F: (608) 833-2874
　　　　　　　　　　　　gingras@gtwlawyers.com
　　　　　　　　　　　　sthompson@gtwlawyers.com
　　　　　　　　　　　　Attorneys for the Plaintiffs

FILED
11-15-2019
CIRCUIT COURT
DANE COUNTY, WI
2019CV003172
Honorable Rhonda L.
Lanford
Branch 16

**STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY**
**BRANCH ____**

**MEGAN DANIELS**
**15145 Kings Ridge Court**
**Brookfield, WI 53005**

**BETSY DANIELS**
**15145 Kings Ridge Court**
**Brookfield, WI 53005**

**CHRIS DANIELS**
**15145 Kings Ridge Court**
**Brookfield, WI 53005,**

                Plaintiffs,

v.

**UNITED HEALTHCARE SERVICES, INC.**
**c/o CT Corporation System**
**301 South Bedford Street, Suite 1**
**Madison, WI 53703,**

                Defendants.

Case No.:
Civil Code: 30303
CONTRACT

---

## COMPLAINT

---

NOW COME the Plaintiffs, Megan, Betsy and Chris Daniels, by their attorneys, Gingras, Thomsen & Wachs, by Robert J. Gingras and Scott B. Thompson, and hereby alleges and shows the following to the court:

### PARTIES

1.    At all times relevant hereto, Plaintiff Megan Daniels ("Megan") has been a minor resident of the State of Wisconsin, residing at 15145 Kings Ridge Court Elmer Road, Brookfield, WI 53005. Megan is the daughter of Chris and Betsy Daniels.

2.      At all times relevant hereto, Plaintiff Betsy Daniels ("Betsy") has been a resident of the State of Wisconsin, residing at 15145 Kings Ridge Court Elmer Road, Brookfield, WI 53005. Betsy is Megan's mother, and wife to Chris.

3.      At all times relevant hereto, Plaintiff Chris Daniels ("Chris") has been a resident of the State of Wisconsin, residing at 15145 Kings Ridge Court Elmer Road, Brookfield, WI 53005. Chris is Megan's father, and husband to Betsy.

4.      Defendant United HealthCare Services, Inc., dba/aka United HealthCare Insurance Company ("UHC"), is an insurance company operating within the State of Wisconsin. UHC provided a policy of insurance to Plaintiffs, which was in full force and effect at all relevant times hereto. The registered agent for service of process is CT Corporation System, 301 S Bedford Ste 1, Madison, WI 53703.

## FACTUAL ALLEGATIONS

5.      UHC is a massive health care insurance company which, according to its website, serves "millions of people from their earliest years through their working lives and into retirement."

6.      On its website UHC represents to Wisconsinites and the greater American public that its mission is to "help people live healthier lives and make the health system work better for everyone." Available at https://www.uhc.com/about-us.

7.      Throughout 2019, UHC has come under fire for its practices in unfairly and/or arbitrarily denying benefits for mental health treatment to qualified individuals across the country.

8.      UHC's practices made national headlines earlier this year when a federal judge in Northern California determined that UHC "created internal polices aimed at effectively discriminating against patients with mental health and substance abuse disorders to save money." Abelson, Reed, *Mental Health Treatment Denied to Customers by Giant Insurer's Policies, Judge*

4

*Rules*, THE NEW YORK TIMES, March 5, 2019, available at https://www.nytimes.com/2019/03/05/health/unitedhealth-mental-health-parity.html; see also *Wit v. United Behavioral Health*, No. 3:13-cv-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019).

9.     According to The New York Times, UHC was found "to have let 'financial incentives' infect" its practices.

10.    Sadly, it seems, Wisconsin families are no stranger to UHC's ignominious practices.

11.    Plaintiffs Betsy and Chris are employees of South Milwaukee School District; Betsy is the Library Media Specialist at the high school, while Chris is the Work-Based Learning Coordinator for the district.

12.    At all times relevant hereto, the Daniels family received health insurance coverage under Betsy and Chris' contract for health insurance, titled UHC's School District of South Milwaukee Choice Plus Plan 1 ("the Plan").

13.    In February of 2017, the Daniels family encountered a family health crisis.

14.    Megan was suffering from severe mental illness at the time.

15.    Megan had a history of dangerous mental health issues—she had already attempted suicide on three occasions.

16.    At that time, February of 2017, Megan's boyfriend overdosed on prescription drugs used to treat his mental health condition.

17.    As a result of this significant trauma, Megan began succumbing once again to insomnia, panic attacks, crippling anxiety, and severe depression with suicidal ideation.

18.    Quite obviously, Megan was not healthy.

19.    Chris and Betsy did everything they could for their ill daughter.

20.     The pair began researching care programs and other facilities in the area that could provide Megan the health care she desperately needed.

21.     To their fortune, they discovered an apt treatment center near to their home – the Nashotah Program and Rogers Memorials Hospital ("Nashotah").

22.     The admission process for this program is lengthy–in the interim, the Daniels family stayed home with Megan at all times, even flying the family grandmother from Arizona to Wisconsin simply to keep tabs on Megan through her mental health crisis.

23.     Eventually, Megan was admitted to the program.

24.     Originally, UHC approved Megan for inpatient care at Nashotah for seventeen days of covered treatment. This approval was then extended by an additional seven days.

25.     At the end of this time period, UHC sent correspondence to the Daniels family informing them that Megan was not "at imminent risk of harm to self or others" and therefore was no longer approved for coverage under the Plan.

26.     Megan's health care providers told the family the exact opposite. They indicated that Megan was not safe to leave the program.

27.     The care at Nashotah costs approximately $1,000 each day. Regardless of the UHC determination, the family did what it had to do – it continued with treatment regardless of the mounting bills to save their daughter's life.

28.     Simultaneously, the family elected to pursue a set of appeals with UHC in hopes of convincing UHC to see reason and listen to Megan's medical treaters.

29.     UHC did not listen to reason or the attending physicians.

30.     In rejection letter after rejection letter, UHC continually insisted that Megan was no longer a candidate for such treatment under the Plan, because she did not present with a risk of harm.

6

31.     Knowing this was not true, Betsy and Chris grew very suspicious.

32.     Betsy and Chris repeatedly pleaded with UHC to produce for their review the documents and conversations UHC was having with Megan's treatment facility.

33.     Eventually, UHC sent these records to Betsy and Chris, although they were wildly disorganized, and out of order.

34.     The records Betsy and Chris received were shocking.

35.     Those records clearly show that Megan's attending physician had advised UHC that:

- "[Megan] is exhibiting the behaviors that put her at risk of suicide."

- "[Megan] has a highly conflictual family situation, and she cannot go home at this point"

- "The key reason for the request for continued treatment is that the member has urges for self injury."

- "[Megan] is unable to regulate her emotions."

- "[Megan's]... home environment...places her at risk for self harm."

36.     Further, the records even document that Megan's attending physician specifically called UHC to protest UHC's repeated denials of care, and to indicate that average stays in the program are 80 days.

37.     It seems that the only thing that kept UHC from providing care was that Megan had not yet committed suicide. The records from UHC document that "[Megan] continues to report thoughts of self-harm, but she has been able to refrain from acting on them."

38.     For the Daniels family, April and May of 2017 were replete with repeated appeals for coverage from Betsy and Chris and corresponding denials of coverage from UHC.

39.     The parents submitted a third and final request for review on May 8, 2017. Their

7

appeal included approximately 500 pages of relevant medical records and documentation verifying

the acute and terrifying reality of Megan's mental illness.

    40.    This third appeal was denied the very next day.

    41.    A final denial of coverage was received on May 9, 2017.

    42.    To date, the total cost of Megan's care in the Nashotah Program is $91,223.

    43.    UHC has covered only $30,755.33 of this total cost, denying coverage for the vast

majority of Megan's treatment.

    44.    UHC has wrongfully and arbitrarily denied Plaintiffs claims for health coverage in

violation of the terms of their policy of insurance.

    45.    UHC breached its insurance contract with Plaintiffs by refusing to pay or honor

Plaintiffs claim for health coverage under the terms of its policy of insurance

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

    46.    As and for a first cause of action against Defendant UHC, Plaintiffs realleges and

incorporates by reference herein all preceding paragraphs and further state:

    47.    At all times relevant to this action, Plaintiffs fully complied with the terms and

conditions of the Plan, including any and all conditions precedent and subsequent to Plaintiffs right

to obtain coverage under the Plan.

    48.    The aforementioned agreement between Plaintiffs and Defendant UHC was a

validly and mutually assented to contractual arrangement which was supported by legal and

valuable consideration.

    49.    Plaintiffs fulfilled all of their contractual obligations and contingencies, including

any and all conditions precedent to the contract between the parties.

    50.    In contrast, Defendant UHC materially breached its obligations and duties arising

under the agreement, in some or all of the following particulars:

- In failing to make proper reimbursement of claims made under the contract, when its obligation to make payment became reasonably clear;

- In acting in direct violation of the terms and conditions of the agreement;

- In dilatory and abusive claims handling practices;

- In placing unduly restrictive and self-serving interpretations on the processing of Plaintiffs' claims and through its claim handling practices; and

- By refusing to cover the treatment that Plaintiff Megan Daniels' treaters determined was necessary for her medical condition.

51.     Defendant UHC's failure to pay for Megan's care pursuant to the Policy constitutes a breach of contract.

52.     As a direct and proximate result of Mid-Century's breach of the Policy, the Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION – BAD FAITH

53.     As and for a second cause of action Plaintiffs reallege and incorporate by reference all preceding paragraphs as if set forth fully herein.

54.     By reason of the described policy of insurance and at all times material UHC stood in a "special fiduciary relationship" with the plaintiffs and owed the plaintiffs a duty of good faith and fair dealing. As a consequence, the plaintiffs had a right to be protected from acts of bad faith by UHC at all times prior to a determination of whether or not they were entitled to coverage for the medical care, described above, under the Plan.

55.     UHC had a contractual duty to timely provide coverage for the medical treatment necessitated by Megan's health condition, as detailed above.

56.     UHC refused to cover this treatment, even when Megan's doctors specifically informed UHC that she was a suicide risk if she were to forego treatment at Nashotah.

9

57.     Regardless of Megan's doctors efforts, as well as the efforts of Betsy and Chris, UHC refused to cover Megan's ongoing treatment under the Plan.

58.     UHC had no reasonable basis to deny coverage for Megan's treatment.

59.     In failing to cover Megan's ongoing treatment at Nashotah, UHC breach its contract and violated its duty of good faith and fair dealing, putting its monetary interests ahead of its heightened obligation to the plaintiffs.

60.     As a consequence of UHC's violation of its duty of good faith and fair dealing, the plaintiffs were required to incur substantial delay in receipt of benefits due under the Plan, and incur substantial additional expense, including attorneys fees, in now developing and prosecuting their right to such benefits through litigation, all to plaintiffs' damage in an amount to be determined by a jury and/or the Court according to law.

## THIRD CAUSE OF ACTION – VIOLATION OF § 628.46

61.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if set forth fully herein.

62.     UHC failed to pay Plaintiffs benefits claim within thirty days of receiving requisite notice.

63.     UHC's failure to timely pay is a breach of Wis. Stat. § 628.46.

64.     As a result of UHC's failure to timely pay for Plaintiffs' claim, the Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION – PUNITIVE DAMAGES

65.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if set forth fully herein.

66.    UHC's conduct was undertaken intentionally and/or with reckless disregard for the consequences of its actions and/or represented a pattern of such conduct to the plaintiffs and others similarly situated so as to permit a jury to determine that UHC is liable for punitive damages.

WHEREFORE, Plaintiffs prays for the following relief:

1.    A demand for trial by a six-person jury.

2.    An award of compensatory damages that will justly compensate the Plaintiffs for their losses.

3.    An award for reasonable attorneys' fees and costs incurred in this action.

4.    Pre-judgment interest and post-judgment interest.

5.    Punitive Damages.

6.    Any other relief the Court deems just and equitable.


Dated this 15th day of November, 2019.

GINGRAS, THOMSEN & WACHS

Electronically Signed By /s/ Robert J. Gingras
Robert J. Gingras
State Bar No.: 1002909
Scott B. Thompson
State Bar No.: 1098161
8150 Excelsior Drive
Madison, WI 53717
P: (608) 833-2632
F: (608) 833-2874
gingras@gtwlawyers.com
sthompson@gtwlawyers.com
Attorneys for the Plaintiffs