IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEGAN DANIELS, BETSY DANIELS
and CHRIS DANIELS,

                      Plaintiffs,

  v.

UNITED HEALTHCARE SERVICES, INC.
and UNITED BEHAVIORAL HEALTH,

                      Defendants.

OPINION AND ORDER

19-cv-1038-wmc

---

Plaintiffs Megan Daniels and her parents, Betsy and Chris Daniels, assert breach of contract, bad faith and statutory, "prompt pay" claims against their insurance plan claims administrators, based on their denial of coverage for inpatient mental health treatment. Before the court is defendants United HealthCare Services, Inc., and United Behavioral Health's motion to dismiss the amended complaint. (Dkt. #20.) For the reasons that follow, the court will grant that motion, concluding that plaintiffs' have not pleaded sufficient facts to overcome defendants' status as third-party administrators and not the insurer, precluding plaintiffs' claims as a matter of law.

ALLEGATIONS OF FACT[1]

Betsy and Chris Daniels are employees of the South Milwaukee School District and

---

[1] At the time of removal of this lawsuit from the Dane County Circuit Court, the court had diversity jurisdiction over the merits under 28 U.S.C. § 1332(a) as: plaintiffs are citizens of Wisconsin; defendant United Healthcare Services, Inc., is a citizen of Minnesota; and the amount in controversy exceeds $75,000. (Not. of Removal (dkt. #1) ¶¶ 5-6, 11-13.) However, plaintiffs' amended complaint purports to add United Behavioral Health as a defendant, without alleging its citizenship. Given that plaintiffs do allege that United Behavioral Health is a subsidiary of United

receive health insurance coverage through the District's Choice Plus Plan 1 (the "Plan"). (Am. Compl. (dkt. #12) ¶¶ 12-13.) Defendant United Behavioral Health ("UBH") is a subsidiary of defendant United HealthCare Insurance Company ("UHC"), who for convenience will be referred to collectively as "United." Plaintiffs allege that "Defendants UHC and/or UBH carry decision-making authority in awarding benefits under the Plan." (*Id.* ¶ 14.)

In February 2017, Megan Daniels was treated for mental health issues at an inpatient treatment center. Originally, United approved Megan's insurance coverage for the cost of seventeen days of inpatient treatment, then extended that coverage for an additional seven days. At the end of that period, however, United informed the Daniels that Megan was no longer considered "at imminent risk of harm to self or others" under the Plan's terms and, therefore, was no longer approved for inpatient coverage. (Am. Compl. (dkt. #12) ¶ 27.) In contrast, Megan's health care providers indicated that she needed to continue with the program for her own safety, so the Daniels continued her inpatient care at approximately $1,000 per day.

At the same time, the Daniels also pursued a set of appeals from the denial of continued coverage, which United explained was based on the "UBH Level of Care Guideline." (*Id.* ¶ 33.) Plaintiffs claimed that this Guideline "was itself in violation of the generally accepted standards of care, thereby improperly tainting Plaintiffs' coverage decision, in violation of the terms of the Plan." (*Id.* ¶ 36.) As for defendants' role in the

---

Healthcare Services, Inc., the court will assume that it is a citizen of Minnesota as well. To the extent the court's assumption is incorrect, all parties are directed to inform the court promptly.

denial of coverage on appeal, plaintiffs point out in their amended complaint that UBH's insignia is on the top of each rejection letter, and that the bottom of those letters state, "Insurance coverage is provided by United Healthcare Services, Inc." (*Id.* ¶¶ 37-38.)

In response, defendants attach to their original and renewed motions to dismiss the 2016 Summary Plan Description ("SPD"), which explains that the Plan is self-funded and the Plan's sponsor, "South Milwaukee School District," is "solely responsible for paying Benefits" under the Plan, as well as is "solely responsible for . . . the timely payment of Benefits." (Nguyen Decl., Ex. 1 (dkt. ##11-1, 22-1) at 1, 4, 110.) Moreover, South Milwaukee School District is also designated as the "Plan Administrator." (*Id.* at 123.) As a result, United serves as the Plan's third-party, "claims administrator," helping South Milwaukee School District "to administrate claims" for healthcare coverage. (*Id.* at 1.) However, the SPD expressly states that "United Healthcare . . . does not guarantee any Benefits." (*Id.* at 1.)

Nevertheless, plaintiffs assert claims against both defendants for breach of contract, bad faith, and a failure to timely pay as required under Wisconsin Statute § 628.46.[2] Plaintiffs seek benefits due "under the Plan" and punitive damages. (Am. Compl. (dkt. #12) ¶¶ 61, 71, 82, 92.)

---

[2] Plaintiffs also seek punitive damages, but this is not a separate cause of action under Wisconsin law, rather it is a form of relief. *See Est. of Bain v. TransAmerica Life Ins. Co.*, No. 18-C-311, 2018 WL 3328005, at *4 (E.D. Wis. July 6, 2018) (explaining that under Wisconsin law, a freestanding punitive damages claim should be dismissed as a separate cause of action ) (citing Wisconsin state court cases). In light of the court's decision dismissing all of plaintiffs' causes of action, therefore, no separate basis for an award of punitive damages exists.

OPINION

**I.  Motion to Strike**

Six weeks after defendants filed their reply in support of their motion to dismiss the amended complaint, plaintiffs filed a "notice of supplemental authority," seeking to direct the court to highlighted language from the SPD that defendants submitted with their motion to dismiss.  (Not. of Suppl. Authority (dkt. #25); Nguyen Decl., Ex. 1 (dkt. #22-1).)  That language emphasizes that Plan's statute of limitations for bringing a legal action applies not just to the District, but to the "Claims Administrator."  In context, that language reads:

> You cannot bring any legal action against School District of South Milwaukee **or the Claims Administrator** to recover reimbursement until 90 days after you have properly submitted a request for reimbursement as described in this section and all required reviews of your claim have been completed. If you want to bring a legal action against School District of South Milwaukee or the Claims Administrator, you must do so within three years from the expiration of the time period in which a request for reimbursement must be submitted or you lose any rights to bring such an action against School District of South Milwaukee or the Claims Administrator.
>
> You cannot bring any legal action against School District of South Milwaukee **or the Claims Administrator** for any other reason unless you first complete all the steps in the appeal process described in this section. After completing that process, if you want to bring a legal action against School District of South Milwaukee or the Claims Administrator you must do so within three years of the date you are notified of the final decision on your appeal or you lose any rights to bring such an action against School District of South Milwaukee or the Claims Administrator.

(Pls.' Not. of Suppl. Authority (dkt. #25) 2 (quoting Nguyen Decl., Ex. 1 (dkt. #22-1) 99-

100) (emphasis in plaintiffs' submission).)  In reliance on this language, plaintiffs now argue that the SPD "specifically acknowledges Plaintiffs' right to bring an action against the Defendants for failing to satisfy the plan's contractual commitments." (*Id.* at 1.)

In response, defendants move to strike this notice and argument all together, because it is not a "notice of supplemental authority," but rather an untimely, unauthorized sur-reply.  (Dkt. #29.)  Keeping in mind that this court has *no* local rule about such submissions -- consistent with a general practice of relying on the Federal Rules of Civil Procedure and common sense, rather than a litany of additional rules addressing the minutia of practice -- the court agrees that plaintiffs' late submission was *not* a notice of supplemental authority.  Within its ordinary plain meaning, "supplemental authority" is typically new legal authority, of arguable dispositive or at least persuasive value, issued after briefing is completed but before the court rules on a pending matter.  Even interpreting supplemental "authority" more broadly, it is certainly not language in a document that was attached to an original motion.  Accordingly, plaintiffs should have either brought this language to the court's attention in their original opposition to the motion to dismiss or acknowledged their failure to do so and sought leave to file a sur-reply.  What plaintiffs should not have done is try to make a new argument without acknowledging that is what is occurring.

As such, the court is inclined to grant defendants' motion to strike.  Still, if the court grants the motion and does not consider this language in the SPD, plaintiffs would likely either move to file a second amended complaint or a motion for reconsideration seeking leave to submit this same argument.  Since this case has already been pending for some

5

time, therefore, the court opts to address the language in the SPD in this opinion and order, especially since the language does not open a new door for plaintiffs' breach of contact claim to proceed. For these reasons, the motion to strike is denied, and the court discusses the significance of this additional language below.

## II. Motion to Dismiss

Defendants seek dismissal of plaintiffs' claims for three, related reasons: (1) plaintiffs' breach of contract claims fail is with the Plan itself, not the claims administrator; (2) bad faith claims under Wisconsin law are generally directed against one's insurance company, while defendants are not plaintiffs' insurer; and (3) similarly, statutory "prompt pay" claims only apply to an insurers' failure to pay. The court addresses each argument in turn below.

### A. Breach of Contract Claims

To begin, defendants seek dismissal of plaintiffs' breach of contract claims on the basis that the only contract at issue is for health insurance coverage with the Plan, not defendants as third-party claims administrators. In *Larson v. United Healthcare Insurance Company*, 723 F.3d 905 (7th Cir. 2013), the Seventh Circuit explained that "benefits are an obligation of the plan, so the plan is the logical and normally the only proper defendant in a claim for benefits." *Id.* at 911; *see also Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013) (affirming district court's ruling that the plan was the "right defendant on the benefits plan"); *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610-11 (7th Cir. 2007) (affirming dismissal of claim for benefits against third-party administrator where the plan documents

6

distinguished between the plan and the third-party administrator). The court acknowledges that most of the cases cited by defendants concern claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1332(a)(1)(B) -- largely because most of the cases concerning denial of coverage implicate the preemption provision of ERISA[3] -- but the court sees no reason (and plaintiffs fail to offer any basis) for distinguishing the key holding in these cases to the common law breach of contract claim at issue here. Indeed, the Seventh Circuit has analogized a denial of benefits claim under ERISA to a breach of contract claim. *See Brooks*, 729 F.3d 764 (explaining the plan is the proper defendant for a right to benefits claim under an ERISA § 502(a)(1)(B) claim because it is "essentially a contract remedy under the terms of the plan" (quoting *Larson*, 723 F.3d at 911–12 (quotation marks omitted))).

In response, plaintiffs largely ignore this overwhelming caselaw and common sense, contending instead that the court should accept their allegation that defendants were contractually obligated to pay benefits and should *not* consider any language in the SPD. Aside from the obvious -- that the court has to consider the Plan's insurance language to determine any coverage obligations -- plaintiffs' argument rests on a mistaken understanding of what documents the court can consider in deciding a motion to dismiss. While plaintiffs are correct that the court may consider documents that are attached to the complaint under Federal Rule of Civil Procedure 10, the court may also consider documents attached to the motion to dismiss as long as they are "concededly authentic"

---

[3] As defendants explain in response to this court's order requesting supplemental briefing, the plan at issue here is not governed by ERISA because it was created by a governmental entity, the District, and is thereby expressly excluded. 29 U.S.C. § 1003(b)(1).

7

and "central to the plaintiffs' claim." *Hecker v. Deer & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009). Indeed, the Seventh Circuit endorsed just such a review of SPDs in *Hecker*, and this court routinely reviews SPDs in denial of coverage cases at the motion to dismiss stage. *E.g.*, *Univ. of Wis. Hosps. & Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp. 3d 1048, 1050 n.3 (W.D. Wis. 2015); *Kolbe & Kolbe Health & Welfare Ben. Plan v. Med. Coll. of Wis., Inc.*, No. 09-CV-205-BBC, 2009 WL 3245108, at *1 (W.D. Wis. Oct. 6, 2009).

Moreover, by filing their misnamed "notice of supplemental authority," plaintiffs have effectively acknowledged the central importance of the document attached to defendants' motion and expressly asked the court to consider the SPD's language as a basis for its claim against defendants as "the Claims Administrator." While the cited language in the notice mentions a possible lawsuit against the claims administrator, this language primarily concerns the statute of limitations for bringing a lawsuit. That language does not *create* a breach of contract claim by itself, including a breach of a duty of the good faith and fair dealing, which under Wisconsin law sounds only in contract.

Finally, to the extent that plaintiffs are relying on defendants' status as agents of the Plan, Wisconsin law holds that "where an agent acts on behalf of a disclosed principal, the agent does *not* become personally liable to the other contracting party." *Williams v. Travelers Home & Marine Ins. Co.*, 402 F. Supp. 3d 499, 504-05 (E.D. Wis. 2019) (emphasis added) (describing a "longstanding general rule" under Wisconsin law) (citing *Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 470 N.W.2d 888, 893 (Wis. 1991)). For unknown reasons, plaintiffs' experienced counsel declined to name the Plan itself as a

defendant, not just in their original complaint, but again in their amended complaint, which was filed *after* defendants pointed out this defect in their original motion to dismiss.

Perhaps, a breach of fiduciary duty akin to a claim under ERISA, 29 U.S.C. § 1132(a)(1)(B), could be asserted, but plaintiffs also did not plead that claim in their original *or* in their amended complaint. Regardless, the language in the SPD states that: (1) the Plan is "solely responsible for paying Benefits"; and (2) the claims administrator's role is limited to helping the Plan Administrator, which is also named as the South Milwaukee School District. (Nguyen Decl., Ex. 1 (dkt. #22-1).) Accordingly, plaintiffs' breach of contract claim fails for lack of privity.

B. Bad Faith Claims

Similarly, defendants seek summary judgment on plaintiffs' bad faith claim based on a lack of contractual privity between plaintiffs and defendants, directing the court to a slew of Wisconsin cases holding that a bad faith claim is necessarily premised on such a relationship. *Danner v. Auto-Owners Inc.*, 2001 WI 90, ¶ 49, 245 Wis. 2d 49, 629 N.W.2d 159 (explaining that special relationship between insurer and insured provides basis for tort remedy if insurer breaches that relationship); *Brethorst v. Alliance Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 35, 334 Wis. 2d 23, 798 N.W.2d 467 ("a bad faith claim arises from the contractual relationship between the parties"). For this reason, our sister court has concluded that a third-party claims administrator "is not liable . . . for bad faith damages" under Wisconsin law, finding that such an administrator is "not a party to the contract and has no contractual duty to" the members. *See, e.g., Diversatek, Inc. v. QBE Ins. Corp.*, No. 07-C-1036, 2010 WL 4941733, at *12 (E.D. Wis. Nov. 30, 2010).

In response, plaintiffs direct the court to *Aslaskon v. Gallagher Bassett Services*, 2007 WI 39, 300 Wis. 2d 92, 729 N.W.2d 712, for the proposition that the "Wisconsin Supreme Court has permitted bad faith claims to arise in circumstances, such as this one, where the defendant(s) administered a benefits program and were not in contractual privity with the plaintiff(s)." (Pls.' Opp'n (dkt. #23) 8.) As defendants explain in response, however, *Aslaskon* is based on a narrow set of facts involving the statutory and regulatory scheme surrounding the government-funded worker's compensation program, and the Wisconsin Supreme Court in post-*Aslaskon* cases reaffirmed its "refus[al] to recognize a bad faith claim when a claimant [i]s not in a contractual relationship with an insurance company." *Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶ 42, 325 Wis. 2d 56, 784 N.W.2d 542. Accordingly, the court concludes that the lack of the privity between plaintiffs and defendants also dooms any bad faith claims under Wisconsin law.

### C. "Prompt Pay" Statutory Claim

Finally, defendants contend that plaintiffs' claim under Wisconsin Statute § 682.46 fails because the plain language of the statute is limited to insurers. Specifically, the statute provides that "an insurer shall promptly pay every insurance claim." Wis. Stat. § 682.46(1). In response, plaintiffs rely on the same argument offered to support their breach of contract claims -- namely, that plaintiffs have claimed a contractual relationship, primarily relying on their allegation that defendants identify themselves as the insurer in communications addressed to plaintiffs. However, this argument again ignores language in the SPD explaining that: (1) the Plan is solely responsible for paying benefits; and (2)

10

defendants' role is limited to assisting the Plan Administrator in deciding claims. Thus, the court concludes that this claim must fail as a matter of law as well.[4]

ORDER

IT IS ORDERED that:

1) Defendants United HealthCare Services, Inc., and United Behavioral Health's motion to dismiss the amended complaint (dkt. #20) is GRANTED.

2) The clerk's office is directed to enter judgment in defendants' favor and close this case.

Entered this 13th day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[4] Because plaintiffs have already had the opportunity to respond to the same arguments raised in defendants' motion to dismiss their original complaint and to file an amended pleading, the court will dismiss this case without providing plaintiffs with the opportunity for further amendment.